UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Criminal No. 3:02CR192(SRU) |
| | | Civil No. 3:04CV1340(SRU) |
| PETER G. TELESCO | : | |
| _____ | | November 29, 2004 |

**GOVERNMENT'S OPPOSITION TO PETITIONER'S
MOTION TO VACATE, SET ASIDE, OR
CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

By motion and supporting memorandum, the petitioner Peter G. Telesco, acting pro se, seeks to vacate, set aside, or correct his sentence. Telesco does not challenge his conviction. Rather, he asserts that his attorney rendered ineffective assistance of counsel in not challenging two Sentencing Guideline enhancements that he had stipulated to in the plea agreement. The Government respectfully submits that, for the reasons stated below, Telesco has waived his claims, that the claims are meritless, and, the petition should be denied.

**I. FACTS AND PROCEDURAL HISTORY**

This § 2255 motion arises from Telesco's conviction on one count of extortion in violation of 18 U.S.C. § 1951. The presentence investigation report ("PSR") at paragraphs seven through 31 thoroughly recounts the facts underlying Telesco's conviction. The facts, as they relate to his motion, are as follows:

Prior to his arrest on July 2, 2002, Telesco had a home heating oil business and, at times, did trucking work for Tuccinardi, Inc., a general landscaping and garden center business located at 45 Liberty Street in Stamford, Connecticut. In the course of these dealings, Telesco repeatedly

extorted money and property from Tuccinardi, Inc., members of the Tuccinardi family, and others. PSR ¶¶ 9 and 11.

In or around October 2001, Telesco came to the offices of Tuccinardi, Inc. to see part-owner Paul Tuccinardi. Telesco entered the office, brandished a small black handgun, and told Paul to get the title to the company's 1987 Ford F-350 truck. As he pointed the gun at him, Telesco demanded that Paul sign the title over. Paul initially bristled at the suggestion, claiming that he had no such power. Telesco responded by firing the gun; the bullet went through the wall, through a cabinet, and into a second wall. Frightened by Telesco's behavior, Paul defecated in his pants. He then retrieved the title to the Ford F-350 and sat down at his desk. A bewildered Paul asked Telesco how he could explain to his uncle the truck's sale for nothing in return. In response, Telesco walked behind Paul. As he pressed the gun to his head, Telesco cocked back the hammer and told Paul to sign. Paul, by now in tears, uttered an expletive as he signed away the company's vehicle. Telesco took the keys to the Ford F-350 and drove off. PSR ¶ 14.

Other incidents of extortion followed. As part of their business dealings, Telesco sold home heating oil to the Tuccinardis, who in turn used the oil in Tuccinardi, Inc. trucks. In so doing, the Tuccinardis unlawfully avoided the payment of certain taxes on oil. Aware of this fact, Telesco approached Paul Tuccinardi in April or May of 2002. Telesco threatened Paul and forced him to sign certain papers relating to company finances. Telesco then demanded $1,000 per month to prevent him from turning the papers over to the IRS. PSR ¶ 13.

Telesco also used threats to obtain payment for goods and services not rendered. For example, a receipt dated May 23, 2002 called for the delivery of 500 yards of compost at $15 per yard. Telesco changed the receipt, delivered only a portion of the 500 yards, and sold the

remainder to a third party. Afterwards, Telesco nonetheless sought to collect the full $7,500 from Tuccinardi, Inc. Cognizant of Telesco's express and implied threats, and fearful of his wrath, the Tuccinardis overlooked this behavior. Also, through threats, Telesco also caused Paul Tuccinardi to sign over checks made payable to A.L. Socci for work Socci had performed for Tuccinardi, Inc. PSR ¶ 13. The funds from Tuccinardi, Inc. to A.L. Socci were identified as documented in invoices dated June 13, 2001 ($17,380), July 10, 2001 ($9,840), and August 3, 2001 ($8,940). Indictment, Count Two at 2.

In June 2002, Mario and Paul Tuccinardi reported Telesco's behavior to law enforcement. They did not come forward earlier because Telesco had falsely convinced them that he was protected by a member of the Stamford Police Department. An investigation followed, and on July 10, 2002 a four-count indictment was returned against Telesco. It charged him with three counts of extortion in violation of 18 U.S.C. § 1951, and one violation of 18 U.S.C. § 924(c)(1)(A).

Negotiations between the Government and Telesco's attorney Richard A. Reeve led to a plea agreement between the parties that is dated September 17, 2003. Attorney Reeve is an experienced criminal defense attorney, who previously served as an Assistant Federal Public Defender. Telesco agreed to plead guilty to the extortion offense charged in count three, which reads, in part, as follows:

> [Telesco] did knowingly and willfully attempt to obstruct, delay, and affect commerce and the movement of any article or commodity in commerce, in that the defendant attempted to obtain $1,000 a month from Tuccinardi, Inc. and Paul Tuccinardi, and attempted to obtain and did obtain property and things of value, that is, various materials including compost and top soil, a 1987 Ford F-350 truck, and funds for work A.L. Socci provided to Tuccinardi, Inc., from Paul Tuccinardi and Tuccinardi, Inc., a general landscaping and garden center company in Stamford, Connecticut, with their consent,

which consent was induced by wrongful use of actual and threatened force, violence, and fear, including direct and indirect threats of physical harm, property damage, and economic loss.

In the plea agreement at page four, the parties specifically stipulated that, under the United States Sentencing Guidelines, the defendant's total offense level was 27 and he fell in Criminal History Category I. As such, the parties agreed that Telesco's applicable Guidelines sentence fell within a range of 70 to 87 months imprisonment. The parties based this stipulation on, *inter alia*, their agreement that a two-level upward adjustment under U.S.S.G. § 2B3.2(b)(1) was proper because the offense involved an express or implied threat of death or bodily injury, and that a one-level upward adjustment under subsection (b)(2) was in order because the amount demanded or the loss to the victim was greater than $10,000 but less than $50,000. The agreement also stated that the defendant would pay $24,500 to the victims as restitution.

In addition, the plea agreement at page five contained the following provision under the heading "Waiver of Right to Appeal or Collaterally Attack Sentence:"

> The defendant acknowledges that under certain circumstances he is entitled to appeal his conviction and sentence. 18 U.S.C. § 3742. It is specifically agreed that the defendant will not appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255, the conviction or sentence of imprisonment imposed by the Court if that sentence does not exceed 87 months' imprisonment and a $125,000 fine, even if the Court reaches a sentencing range permitting such a sentence by a Guideline analysis different from that specified above.

The defendant expressly acknowledged in the plea agreement that "he is waiving his appellate rights knowingly and intelligently." Plea Agreement at 5. Telesco certified with his signature at page eight of the plea agreement that he read, understood, and accepted the plea agreement. The agreement stated that

  he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had enough time to discuss it with his attorney, that his attorney has answered any questions he had about it, that it sets forth the entire agreement and understanding between him and the Government, and that he fully understands and accepts the terms thereof.

  On September 17, 2003, Telesco appeared in Court with his attorney, withdrew his not guilty plea, and pleaded guilty to count three in the indictment. Consistent with the Court's practice, a Rule 11 canvas was performed prior to accepting Telesco's guilty plea. As part of the plea proceeding, Telesco acknowledged that he was knowingly and voluntarily waiving his right to appeal or collaterally attack his sentence according to the terms of the plea agreement.[1]

  Prior to sentencing, defense counsel filed a Memorandum in Aid of Sentencing of Sentencing, raising three issues: (1) the appropriate sentence within the Sentencing Guideline range of 70 to 87 months' imprisonment; (2) the propriety of a downward departure from the applicable fine range of $12,500 to $125,000; and (3) a potential Court recommendation to the Bureau of Prisons of a particular prison so that the defendant might receive needed mental health counseling and treatment. Consistent with the plea agreement, Telesco did not challenge the Guideline calculations of 70 to 87 months' imprisonment. PSR ¶ 67.

  On December 4, 2003, the Court sentenced Telesco to 84 months' imprisonment and 3 years of supervised release, imposed a $5,000 fine, and ordered restitution in the amount of $24,500. Telesco did not appeal his sentence.

---

[1] Telesco does not claim that his waiver was entered into unknowingly or involuntarily and his filing does not address the waiver issue. Telesco did not order the transcript of his guilty plea proceeding. Government counsel's recollection is that the Court, consistent with its practice at plea proceedings, inquired of the defendant's waiver of his appellate rights and waiver to challenge his sentence. The Government has ordered the plea proceeding transcript and will supplement its response if the transcript indicates otherwise.

Telesco now attacks the 84-month sentence claiming that his attorney failed to challenge two specific offense characteristics under U.S.S.G. § 2B3.2(B) -- a two-level upward adjustment under (b)(1) because the offense involved an express or implied threat of death or bodily injury, and a one-level upward adjustment under (b)(2) because the amount demanded or the loss to the victim exceeded $10,000 but was less than $50,001 under the table in U.S.S.G. § 2B3.1(b)(7).

For reasons explained below, the Government submits that Telesco has waived both his claims, and that in any event they lack merit.

## II. ARGUMENT

### A. Legal standards

**1. Waiver**

When a defendant knowingly and voluntarily waives his right to appeal a sentence within a stipulated guideline range, that waiver is enforceable. United States v. Monzon, 359 F.3d 110, 116 (2d Cir. 2004); Djelevic v. United States, 161 F.3d 104, 106 (2d Cir. 1998); United States v. Maher, 108 F.3d 1513, 1531 (2d Cir. 1997); Rosa v. United States, 170 F. Supp.2d 388, 397 (S.D.N.Y. 2001)(holding that the case law pertaining to direct appeal waivers "appl[ies] equally to [the] waiver of [the] right to seek post-conviction relief generally"). Though courts will allow a defendant to claim ineffective assistance when he wishes to *withdraw* his plea on that basis, United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001), the rule allowing waiver applies with equal force to ineffective assistance of counsel claims that challenge only the propriety of the *sentence*. Monzon, 359 F.3d at 118; see also Hernandez, 242 F.3d at 113 ("[H]ad Hernandez raised any issues about his sentence, we would have refused to consider them."). A defendant can never circumvent his knowing and voluntary appeal waiver by simply "dress[ing] up" his

Sentencing Guidelines challenge as a Sixth Amendment violation; to allow such a claim would "render the plea bargaining process and the resulting agreement meaningless." Djelevic, 161 F.3d at 107; United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993). So long as the record itself does not conclusively establish the merits of an ineffective-assistance-of-counsel claim, this Court must enforce a knowing and voluntary appeal waiver or waiver not to collaterally attack a sentence and dismiss a challenge on that basis. See Monzon, 359 F.3d at 119; Rosa, 170 F. Supp. at 397.

**2. Ineffective Assistance of Counsel**

Absent waiver, a prisoner may freely raise ineffective assistance of counsel for the first time in a § 2255 petition. Massaro v. United States, 538 U.S. 500, 509 (2003). A person challenging his conviction on that basis bears a heavy burden. In Strickland v. Washington, 466 U.S. 668, 688 (1984), the Supreme Court held that a defendant must establish (1) that his counsel's performance "fell below an objective standard of reasonableness" and (2) that counsel's unprofessional errors actually prejudiced the defense.

The Second Circuit further explained this test in Brown v. Artuz, 124 F.3d 73, 79-80 (2d Cir.1997):

> To satisfy the first, or "performance," prong, the defendant must show that counsel's performance was "outside the wide range of professionally competent assistance," [Strickland, 466 U.S.] at 690, and to satisfy the second, or "prejudice," prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

Under the performance prong, counsel's failure to raise or insist on a meritless claim is never ineffective assistance, and "'strategic choices made after thorough investigation of law and

facts relevant to plausible options are virtually unchallengeable.'" United States v. Kirsch, 54 F.3d 1062, 1071 (2d Cir. 1995) (quoting Strickland, 466 U.S. at 690).

A defendant must meet both requirements of the Strickland test to demonstrate ineffective assistance of counsel. If the defendant fails to satisfy one prong, the court need not consider the other. Strickland, 466 U.S. at 697.

**B. Discussion**

    **1. Telesco Waived His Claims**

As in Monzon, the petitioner in this case "challenges only h[is] sentence and does not seek to withdraw h[is] plea of guilty." Monzon, 359 F.3d at 118; Telesco Memorandum at 4 ("Mr. Telesco does not wish to pull his plea[], just that he[] [be] sentence[d] under a guideline that qualify for him."). Since the plain language of his plea agreement prohibits this challenge, Telesco has creatively "dress[ed] up his claim as a violation of the Sixth Amendment," claiming ineffective assistance of counsel. See Djelevic, 161 F.3d at 107. Under Monzon, this attempt to circumvent his plea agreement must fail if (a) the record "indicates that the appeal waiver was knowing and voluntary," and (b) the record of the criminal proceeding does not conclusively establish Telesco's claims. 359 F.3d at 118-19.

Telesco does not contend that his waiver of appeal and collateral attack of his sentence was not knowing and voluntary. Likewise, he does not argue that he received ineffective assistance of counsel in entering into the waiver and the plea agreement.

Furthermore, nothing in the record indicates that Attorney Reeve provided ineffective assistance by stipulating to upward adjustments under §§ 2B3.2(b)(1) and (2). Both adjustments clearly applied to Telesco, and the failure to advance meritless arguments is never ineffective

assistance. See Kirsch, 54 F.3d at 1071.  Even if the claims had any merit, however, nothing in the record supports Telesco's contention that his attorney failed to "question the government applying" the two adjustments during negotiations. Telesco Memorandum at 3.  The record in the criminal proceeding contains no details about the negotiations between the Government and Telesco's attorney.  Attorney Reeve may have made a "strategic choice[]" to stipulate to the two enhancements "after investigating the law and facts relevant to plausible options." See Kirsch, 54 F.3d at 1071.  If so, that "strategic choice[]" is "unchallengeable." Id.  The plea negotiations resulted in the Government agreeing at page four not to seek any upward departures under the Guidelines despite the defendant's seven prior conviction that were not counted in calculating his criminal history score of I (PRS ¶¶ 44-52), and agreeing at page seven to seek the dismissal of the remaining counts, including a 18 U.S.C. § 924(c) count concerning the use of a firearm that called for a mandatory consecutive sentence.

      The record in Telesco's criminal proceeding does not conclusively establish, or even hint at, ineffective assistance of counsel.  His attorney agreed to the two enhancements that were warranted by the facts.  See Monzon, 359 F.3d at 119 ("the merits of the ineffective-assistance-of-counsel claim cannot not be determined on the basis of the record on appeal, [and] it is appropriate to enforce the appeal waiver and dismiss" the petition.)

      **2. Assuming Telesco Had Not Waived His Claims, They Lack Merit**

      Even if Telesco had not waived his right to bring this motion, his dressed up Sentencing Guidelines challenge have no merit. Telesco's claim that Attorney Reeve failed to provide effective assistance of counsel rests on his own misreading of the United States Sentencing

Guidelines. As such, the failure to press these facially baseless arguments during plea negotiations do not constitute ineffective assistance. See Kirsch, 54 F.3d at 1071.

### a. Telesco's Double Counting Claim

Telesco contends that the application of § 2B3.2(b)(1) constituted double counting, and that his attorney provided ineffective assistance when he failed to "at least question[]" its application. Telesco Memorandum at 3. "Impermissible double counting" occurs when a court enhances a sentence based on a guideline provision that "reflect[s]… [a] harm that has already been fully accounted for…." United States v. Napoli, 179 F.3d 1, 13 n. 9 (2d Cir. 1999) (quoting United States v. Dudley, 102 F.3d 1184, 1186 (11th Cir. 1997)). Telesco claims that the threat of violence is a necessary element of his underlying Hobbs Act violation, and that as a result the two-level upward adjustment for an "express or implied threat of death [or] bodily injury" was impermissible double counting. See 18 U.S.C. § 1951; U.S.S.G. § 2B3.2(b)(1).

"The elements of an offense under 18 U.S.C. § 1951 are (1) interference with commerce in any way or degree, and (2) extortion." Rizzo v. United States, 516 F.2d 789, 793 (2d Cir. 1975). The elements as set forth in the plea agreement and repeated again at the plea proceeding are: (1) The defendant knowingly induced a victim(s) to part with property; (2) The defendant did so by the wrongful use of actual or threatened force, violence, or fear; and (3) That in doing so, interstate commerce was in any way or degree obstructed, delayed, or affected. The statute defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, *or* fear, *or* under color of official right." 18 U.S.C. § 1951(b)(2) (emphasis added).

As the statute's use of the disjunctive "or" makes plain, an express or implied threat of death or bodily injury is not a necessary element of a Hobbs Act violation. In fact, "[e]xtortion through threats of *economic* loss fall within the Hobbs Act's prohibitions." Defalco v. Bernas, 244 F.3d 286, 313 (2d Cir. 2001) (emphasis added); see also United States v. Capo, 817 F.2d 947, 951 (2d Cir. 1987) (en banc) ("The cases interpreting the Hobbs Act have repeatedly stressed that the element of 'fear' required by the Act can be satisfied by putting the victim in fear of economic loss."). All Hobbs Act extortion offenses have a base offense level of 18. U.S.S.G. § 2B3.2(a). In cases like Telesco's, where the offense involves an actual or implied threat of death or bodily injury, the defendant receives the 2-level upward adjustment of § 2B3.2(b)(1). As such, § 2B3.2(b)(1) "reflect[s]… [a] harm" not fully accounted for in the underlying statute, and its application in Hobbs Act cases is not impermissible double counting. See Napoli, 179 F.3d at 13 n. 9.

Here, Telesco not only extorted Paul Tuccinardi and Tuccinardi, Inc., at various times with threats, but on one occasion while demanding title to a truck he pointed a handgun at Paul, fired the gun at a wall, and then put the gun to Paul's head, cocked the hammer, and told him to sign the title. Based on those undisputed facts, the offense at least involved the threat of bodily injury in that Telesco, by pointing the gun at Paul and his head, threatened to shoot Paul if he did not sign the title. Defense counsel properly agreed to the two-level enhancement under subsection (b)(1).

b. Telesco's Calculation of Amount Demanded or Loss to the Victim under § 2B3.2(b)(2)

Telesco also claims that his attorney provided ineffective assistance when he agreed to the one-level upward adjustment under § 2B3.2(b)(2) for an amount demanded greater than

-11-

$10,000 but less than $50,000.  He writes: "Paul Tuccinardi sign a title over for a flat bed car carrier 1987 Ford this only truth of what petitioner has gotten from Mr. Tuccinardi." Telesco Memorandum at 4.

It is unclear what Telesco is arguing in this cryptic sentence.  If he claims that the enhancement should not apply because all he *received* from *Paul* is a 1987 Ford F-350, that argument is unavailing.  U.S.S.G. § 2B3.2(b)(2) provides for a one-level upward adjustment when the "amount demanded *or* the loss to the victim exceeded $10,000." (emphasis added). The upward adjustment depends "on the greater of the victim's loss or the amounts demanded from the victim." United States v. Zhuang, 270 F.3d 107, 109 (2d Cir. 2001).  Telesco pleaded guilty to the extortion offense in count three that charged him with more than just an extortionate demand for a 1987 Ford F-350.  It also charged him with attempting to obtain "$1,000 a month from Tuccinardi, Inc. and Paul Tuccinardi," as well as "funds for work A.L. Socci provided to Tuccinardi, Inc.," and other "property and things of value… including compost and top soil."

The parties did not agree on the exact amount over $10,000 that Telesco sought to extort or actually extorted from Tuccinardi, Inc. and Paul Tuccinardi from mid-2001 to July 2, 2002. The record shows that the amount exceeded $10,000 as stipulated to by Telesco.  There is the $1,000 per month he demanded in April or May 2002 from the Tuccinardi when he threatened to turn over certain papers to the IRS.  Add to that the undelivered 500 yards of compost at $15 per yard (which totals $7,500), his efforts to collect $7,500 from the Tuccinardis for the compost, the funds payable to A.L. Socci that are documented (totaling approximately $34,000), and the Ford F-350 truck which he sought to extort from Paul Tuccinardi.  Morever, in the plea agreement at page two, Telesco agreed to pay the victims of his extortion conduct $24,500 in restitution.  PSR 75.  Therefore, the amount Telesco demanded "was the greater of the amount demanded or lost,"

and "under the plain language of § 2B3.2(b)(2)" a one-level upward adjustment was proper. Zhuang, 270 F.3d at 109.

The facts warranted to the two- level adjustment and, therefore, cannot support a finding of ineffective assistance of counsel.

## **CONCLUSION**

Based on the foregoing, the Government respectfully submits that the petitioner Telesco knowingly and voluntarily waived his two sentencing claims. The Court should enforce the bargain that was reached in the plea agreement and not permit a resentencing. Otherwise, the plea bargaining process and the plea agreement, which included concessions by the Government, would be meaningless. Even if the claims were not waived, based on the facts, they nonetheless lack merit. Therefore Telesco's § 2255 motion should be denied.

    Respectfully submitted,

    KEVIN J. O'CONNOR
    UNITED STATES ATTORNEY


    PETER S. JONGBLOED
    ASSISTANT UNITED STATES ATTORNEY
    Federal Bar No. CT03192
    157 Church Street
    P.O. Box 1824
    New Haven, Connecticut  06508
    (203) 821-3700

John Cerreta
Law Student Intern

-14-

CERTIFICATE OF SERVICE

  I hereby certify that on this 29th day of November 2004, a true and correct copy of the foregoing Government's Response was served via first-class mail, postage prepaid, upon the defendant:

    Peter G. Telesco
    Inmate # 14737-014
    Otisville FCI
    P.O. Box 1000
    Otisville, NY 10963

              _____
               PETER S. JONGBLOED
               ASSISTANT UNITED STATES ATTORNEY